IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-CV-0266-W-HFS |
| | ) | |
| FEDERAL INSURANCE COMPANY; | ) | |
| OLD REPUBLIC INSURANCE | ) | |
| COMPANY; NATIONAL UNION FIRE | ) | |
| INSURANCE COMPANY OF | ) | |
| PITTSBURGH, P.A.; TWIN CITY FIRE | ) | |
| INSURANCE COMPANY; XL | ) | |
| SPECIALTY INSURANCE COMPANY; | ) | |
| and RLI INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This litigation arises from the financial difficulties of Interstate Bakeries Corporation, a named insured in a Directors and Officers Liability Policy. Six insurers of portions of liability are defendants in this case seeking coverage. The plaintiff, U.S. Bank, is trustee of a Creditors' Trust under a reorganization plan, and files as assignee of Paul E. Yarick. Yarick and James R. Elsesser were Interstate officials, and were thus insured under the policy. Claims well in excess of $100 million were asserted against Yarick for alleged breach of fiduciary duties; that is, misconduct in accounting for obligations of Interstate, the deficient handling of workers compensation reserves. Elsesser allegedly failed to exercise proper supervisory duties, but was dismissed from the underlying suit without prejudice. After the insurers denied coverage, for reasons to be discussed,

the claims against Yarick were settled for a judgment of $56 million. As part of the settlement agreement, Yarick was promised that, upon assignment of his insurance coverage rights, he would not be pursued for payment. Because of that restriction in the agreement and ensuing judgment I conclude that Yarick has suffered no "loss", as defined in the policy, and thus there is no insurance coverage under Missouri law.

Motions to dismiss, filed by the insurers, rest essentially on two grounds, set forth in a rejection letter dated September 1, 2009, attached to the Complaint, referred to as the Perlis letter. Because the claim was originally owned by the employer, Interstate, and was assigned to U.S. Bank, on behalf of creditors, Perlis relies on a policy exclusion of "Insured vs. Insured" claims. Plaintiff seeks to use a Bankruptcy exception to the exclusion.[1]

The second ground for rejection is that the policy applies only to sums that an insured officer (or director) "becomes legally obligated to pay" and for which he has not been "absolved from payment." Defendants contend the settlement agreement preserves no viable claims because it shields the officer from any ultimate personal obligation.[2] The Surreply argues there was a breach of the insurers' duty to defend. In some jurisdictions this may create an estoppel to rely on policy restrictions on coverage.

---

[1] It also claims to be a different entity from the Insured Organization, a contention I need not resolve. For present purposes I shall assume plaintiff is mistaken on this point. See, Reliance Ins. Co. of Illinois v. Weis, 148 B.R. 575 (E.D.Mo. 1992)(Limbaugh, J.), aff'd. 1993 WL 369302 (8th Cir.).

[2] The Perlis letter also relies on a failure to obtain the insurers' consent to settlement, but this is not pressed at this time by Federal Insurance Company, the primary insurer, because when the insurers declined coverage they apparently lost the procedural right to enforce their consent options.

## I. Insured vs. Insured Defense

Plaintiff tacitly acknowledges that if Interstate had a claim against its officers there would be no insurance to cover their liability to their employer. This was not a fidelity bond but was insurance protecting officers and directors, if needed, from outsider claims. Plaintiff relies, however, on a Bankruptcy exception to the exclusion. The exception allows claims by the successor to an insured employer such as "any bankruptcy trustee" or any "trustee ... or similar official appointed by the court in any such proceeding to ... liquidate the Insured Organization."

The Complaint alleges that plaintiff is "a duly appointed trustee ... of the IBC Creditor's Trust (the Trust) created pursuant to a Bankruptcy Court-approved settlement and Chapter 11 plan of reorganization for the benefit of unsecured creditors ..." (Complaint: ¶ 12). The Complaint further alleges that in 2004 Interstate filed a voluntary petition for relief in this district under Chapter 11 of the Bankruptcy Code, and that four years later it sought court approval of a plan of reorganization which provided for the creation of the Trust and appointment of U.S. Bank as Trustee. (Id: ¶ 17). It further alleges that on December 5, 2008, the Plan was confirmed by the Bankruptcy Court, which released Interstate's obligation to pay unsecured creditors. (Id: ¶ 18). "The Confirmation Order approved the appointment of U.S. Bank to serve as Trustee of the Trust." (Id: ¶ 19). Thereafter, suit was filed against Yarick, and then settled.

Defendants contend that the allegations do not claim that U.S. Bank is qualified as either a "bankruptcy trustee" or a trustee "appointed by the court" to liquidate Interstate. Since there is no claim that U.S. Bank was literally appointed by the court (as distinguished from been otherwise selected in a plan approved by the court) the Bankruptcy exception arguably does not quite apply

3

to this case. It has apparently never been judicially applied or rejected in this context.

This argument by defendants parses the language too closely. When approving the Plan, containing a selection of a trustee, the judicial action can be treated as an appointment by the court, broadly construed. The ordinary reader would, in my judgment, consider this to be a form of court-selection or appointment. I note that a business journal reporter, apparently without guidance from plaintiff's counsel, read it this way.[3] Any ambiguity in the policy yielding a reasonable alternate reading is to be construed against the defendant insurers. I therefore reject the first legal defense offered by the insurers. I also reject the defendants' theory that the trustee must be charged with complete liquidation rather than partial liquidation by collecting assets and paying creditors. This again is debatable nit-picking that would escape the ordinary careful reader.

## II. The Officer has suffered no "Loss"

Judgment has been entered against the officer, but he is contractually exempted from collection of the judgment, and recovery is limited to possible claims against the insurers. This is a familiar proceeding in personal injury claims under Missouri law, but the enactment of a statute authorizing the practice in that context suggests there might be a distinct public policy question in the absence of statutory authority. Defendants rely primarily on the provision that "Loss does not include ... any amount ... not indemnified by the Insured Organization for which the Insured Person is absolved from payment by reason of any ... agreement ..." Doc. 43-1, Endorsement No. 4, ¶ 1.a(i). I agree with the carefully prepared recommendation of a Magistrate Judge in Massachusetts that this coverage restriction is a bar to recovery because the officer has suffered no "loss", as defined by the

---

[3]"The bank was made trustee ... by court order ..." *Kansas City Business Journal, April 30, 2010.*

4

policy. Holmes v. Federal Insurance Company, 2005 WL 4134556 (D.Mass.).

If the policy had simply required that the officer be "legally obligated to pay" damages and a judgment was entered against him, the question would have been much closer. In an opinion trying to predict Iowa law, Judge John R. Gibson noted a division of authority on that question, when there is an agreement not to execute. He adopted the view that the obligation of the judgment was rendered meaningless, as a practical matter, by the restriction on execution. Freeman v. Schmidt Real Estate & Ins., Inc., 755 F.2d 135 (8th Cir. 1985). The prediction turned out to be mistaken. Red Giant Oil Co. v. Lawlor, 528 N.W.2d 524 (Iowa 1995).[4]

How a Missouri court would rule on the "legally obligated" language standing alone is a close question. I am inclined to think Missouri would rule with Iowa, and with Judge Heaney's dissent in Freeman, particularly since the Missouri General Assembly has rejected, in another context, the public policy issue that influenced Judge Gibson's opinion in Freeman. But the language must be read in context, and any question is readily dispelled by the further wording.

Because contractually "absolved from payment" seems crystal clear, the specific language favoring the insurers controls.[5] Thus, I accept the second defense asserted by Federal Insurance. The policies of the other insurers track that of Federal Insurance. The judgment against Paul Yarick has

---

[4]Red Giant does not necessarily mean, however, that plaintiff would now be entitled to prevail as a matter of law, because a claimant in Iowa would still have the burden of showing that the settlement was "reasonable and prudent" although entered into by a defendant with nothing to lose. 528 N.W.2d at 535.

[5]Plaintiff suggests in oral argument that while the judgment may be legally unenforceable, self-help, as with a gambling debt, might occur. I cannot believe this would be permissible. In any event the ordinary reader would not contemplate such continuing exposure. A Ninth Circuit panel understood a covenant not to execute as a "protection against having to pay anything." Biltmore Associates, LLC v. Twin City Fire Ins. Co., 572 F.3d 663, 667 (2009).

5

not resulted in a $56 million loss to him, as defined in the Policy. Therefore recovery from the insurers is precluded in this case by the plain language of the Policy.

At oral argument a belated contention by plaintiff emphasized the introductory phrasing of the "absolved from payment" provision regarding the definition of Loss. As noted, that provision excludes from Loss "any amount <u>not indemnified by the Insured Organization</u> for which the Insured Person is absolved from payment ... " Counsel argued that "Mr. Yarick is indemnified by the insured organization by virtue of Delaware law which requires that he be indemnified ... Interstate Bakery paid for this insurance policy to pay its obligation to indemnify Mr. Yarick imposed by Delaware law." The reference to Delaware law, not previously briefed by plaintiff, suggests that the insurance policy itself satisfied an indemnification obligation, which would mean that the "absolved from payment" provision in question, although inserted in the policy, could never be invoked where there is such a policy. Such a strained and self-defeating interpretation is not reasonably inferable by a reader, and it would be nonsense to include in the policy a provision that would never have any effect.[6] Another meaning is highly probable.

The language, though somewhat odd, seems probably designed to avoid double payment, as well as payment that is not needed by an insured. I previously noted (Doc. 111) that indemnified sometimes refers to past payment, repayment, or reimbursement, perhaps by a third party. As applied

---

[6]In the post-argument brief submitted by plaintiff (Doc. 114) it seems to acknowledge that absence of indemnification, which is one condition for asserting a covered Loss, cannot reasonably mean failure to obtain insurance, as that would never occur when there is a suit on a policy. It now contends that tendering a claim to the insurer should be considered an act of indemnification by the employer, making the special definition of Loss in the policy inapplicable. Assuming a claim against an officer might not be tendered under some unusual circumstances, but that coverage was somehow litigated, plaintiff is still relying on a reading of "indemnification" that is too extraordinary to occur to the ordinary reader.

here, and as the argument in the Surreply (Doc. 94) emphasizes, it is only "potentially exorbitant defense costs" in the Yarick litigation that might be in question. As far as we know from the material presented before argument those costs have not been repaid, and there may be no assurance of repayment.[7] A defense costs claim rather than a $56 million judgment issue is arguably left open as an uncompensated loss. Plaintiff's Complaint aims higher than that, and makes no claim for unreimbursed expenses on behalf of Yarick. Compare, Waltuch v. Conticommodity Services, Inc., 86 F.3d 87 (2nd Cir. 1996) for an indication of the intricacies of Delaware law regarding reimbursement of defense costs. I must disregard unreimbursed defense costs, which may be a conceivable claim, under the pleadings and supporting documents, but one that is outside the prayer in this case, and does not relate to the judgment – that is the "amount" in question. If the policy language is to be enforced, plaintiff cannot recover from defendants the amount of the judgment for which Mr. Yarick has been "absolved from payment."

The thrust of the Surreply is, however, that the Perlis letter rejected participation prematurely and that defendants should thus be precluded from asserting the plainly stated policy limitations on coverage. But the complete protection of Yarick's assets was contemplated in an earlier Assignment Agreement between Interstate and the Creditors Trust in which Yarick was a third party beneficiary. Doc. 43-8, ¶ 4. As I read the Surreply, it argues essentially that there should be an estoppel to invoke the wording limiting coverage because there was allegedly a breach of a duty to defend.[8] This is

---

[7]Subsequent to argument, on an assumption the court would use summary judgment practice, plaintiff offered some correspondence which supports a claim of indemnification as to expenses. But that is not "the amount" in controversy here, or referred to in the subparagraph.

[8]Plaintiff contends that an "abandoned" insured has a right to settle on the best terms available to him, which justifies the judgment. But it is not the judgment that is obviously vulnerable. Insurance coverage is the issue, and plaintiff must use its insurer misconduct theory

unsound, for several reasons. It is true that the Complaint does allege that the insurers "wrongfully refused to defend or indemnify". Doc. 1, ¶ 49. But Clause 11 of the policy relieves the insurers of any duty "to defend Claims against the Insured Persons". Doc. 43-1, page 21.

Even assuming a duty to pay defense <u>costs</u>, and an anticipatory breach of that obligation, I am satisfied this would not disable the insurers from relying on the limitations of coverage that were not impacted by the breach. <u>See</u>, <u>Elliott v Hanover Ins. Co.</u>, 711 A.2d 1310, 1313 (Me. 1998), and authorities cited; <u>Flannery v. Allstate Ins. Co.</u>, 49 F.Supp.2d 1223, 1227-29 (D.Colo. 1999), approved by the Tenth Circuit in <u>Signature Development Co. v. Royal Ins. Co. of America</u>, 230 F.3d 1215,1222 (10th Cir. 2000). Estoppel to rely on policy coverage terms has not been used in Missouri as a consequence of breach. <u>Taylor v. Commercial Union Ins. Co.</u>, 614 F.2d 160, 163 (8th Cir. 1980) (McMillian, J.) (estoppel is used in special inequitable situations, not asserted here); <u>Maryland Cas. Co. v. Fidelity & Cas. Co. of New York</u>, 313 F.Supp. 560 (W.D.Mo. 1970) (Becker, Ch. J.); <u>Blew v. Conner</u>, 310 S.W.2d 294 (Mo.App. 1958) (Hunter, J.).[9] The initial suggestions in opposition advanced no estoppel contention, and the additional briefing by plaintiff cites no pertinent Missouri authority for imposing an obligation going beyond the limited coverage of the policy. To the extent the Ohio practice referred to in <u>Holmes</u> may be inconsistent with Missouri law, I am satisfied this case would not be controlled by any such line of authority.

Defendants' motions to dismiss (ECF docs. 33, 35, 38, 44, 48, 49) are GRANTED.

---

to bar use of the definition of Loss. This would be an estoppel theory, although plaintiff does not use the term. In the interest of fair disposition of the claim I will briefly examine whether, under Missouri law, there could be an estoppel to rely on the critical provision in the policy.

[9]Presumably the Missouri remedy for breach of an existing duty to pay defense costs would simply be recovery of such costs as the "resultant damages from that breach of contract." <u>Truck Ins. Exchange v. Prairie Framing, LLC.</u>, 162 S.W.3d 64, 89 (Mo.App.W.D. 2005).

8

Judgment shall be entered in favor of defendants.

                                        /s/ Howard F. Sachs  
                                        HOWARD F. SACHS  
                                        UNITED STATES DISTRICT JUDGE

October  4 , 2010

Kansas City, Missouri